I have a final case, Mr. Torres. Mr. Torres, who's bringing the initial appeal? I believe I am, Your Honor. We were the first appellate plaintiff. Pardon me? My understanding, Your Honor, is that we filed the first appeal. We were the first in time to file as the plaintiffs. And so I think the parties understood that the plaintiff appellate would argue first. Are you Mr. Torres? I am Mr. Petzold, on behalf of Mr. Fitzwater. Well, who brought the first appeal? All right, well, then you should go ahead and argue. We'll let them argue the cross-appeal. Yes, Your Honor. Okay. Now, did you submit the 28J letter? Yes, Your Honor, I did. Why was that submitted to this court on the Monday before – this is Wednesday – before oral argument? Your Honor, that case is not – doesn't – The 28J letters are supposed to refer to cases that are decided after briefing, of which counsel was previously unaware. Now, when was the case that was in this 28J letter decided? I believe it was decided in 2021, Your Honor. All right, it's been out there for a long time, and it's not supplemental authority. Now, why did you wait until two days before or one day before oral argument that jammed the opposing party into having to make a quick response while he's trying to prepare for argument? Now, why did you wait if that case was available to you in 2022? Well, Your Honor, my understanding is that the purpose of that 28E, 28J was to bring additional authority even after oral argument. You could have included that case in your briefing, couldn't you? It was decided after the case went to trial, I believe, Your Honor, but yes, it does relate. So before you filed an appellate brief, it could have been out for a long time. Yes, Your Honor, it was. Well, would this use of 28J authorities just result – oh, I just won't put it in our appellate brief, I'll just throw it in on a 28J at the last minute so as to throw my appellees off guard? And it's too open to gamesmanship and to approaching this court with briefs and dribbles and the rest. with a 28J letter right before they're trying to prepare as you are. Do you understand why that did not strike me in a favorable fashion? I do, Your Honor. All right, proceed. This case, may it please the court, Your Honors, is brought by the appellant Benny Fitzwater and the others. I'm Sam Petzonck, and I'm here with Bren Pomponio for those appellants. It's a case about fraud by a fiduciary and the availability of remedies under ERISA, specifically the remedy of reformation, which was awarded by the district court after a bench trial. Who specifically are you representing? I'm looking at the sheet here and trying to determine because it's kind of odd. I represent Fitzwater and the coal miners who were the beneficiaries of this plan. Okay, so you're representing – okay. And I am an appellant and an appellee as to the non-prevailing – For the two. Yes. But he's doing a cross appeal. He's done a cross appeal, yes. There are appeals going both ways here because we won a verdict for two out of the seven plaintiffs at trial, and I will address the others. I understand. The district court – despite finding fraud, the district court deprived the most plaintiffs of a remedy. The issue on the appeal is whether the district court erred by imposing additional elements to the claims of fiduciary breach and discrimination. The district court can tell – Let me understand in terms of the cause of actions here. The claims experience and the rest of you, you're not bringing that, at least I guess at this point, or maybe even the equitable tolling against Jack on his claim, but it's primarily we're here on the breach of fiduciary duty, and there are six plaintiffs here, four of which – two of whom prevailed below and the four that didn't. That – Yes. And the question is whether that was properly determined by the district court. That's the narrow view that we're going to have on appeal here. Well, there are three issues on appeal, Simon's Fair. First has to do with fiduciary breach. Second has to do with discrimination, the count of claims based discrimination. Well, that's what I want to know. Are you going to spend some time on that, or are you going to focus primarily on this fiduciary breach? I can say you probably ought to spend it on fiduciary breach from my perspective, but I can't speak for my client, but for my colleagues here. I agree. The error is clear cut on fiduciary breach. This court should – I didn't say it was – you're not agreeing with me saying that. I'm simply saying that seems to be the determinative fact. The district court, it looks to me, really did a fine job of parsing these cases, these things out to determine whether or not there was some injury here, whether there was detrimental reliance on it. And therefore, which the court says no and in two, yes. And it looks pretty good to me what the district court did. So maybe, at least from my perspective, you can tell me why that district court was not correct, or at least our review of that should not affirm it. I'd like to know. The district court confused the elements of equitable estoppel with the elements of showing fiduciary breach. The cases the district court relied on for the requirement of detrimental reliance are estoppel cases, not fiduciary breach involving other remedies like the remedy of – You're going to have to go through each one of these, aren't you? Well, I can tell you, Your Honor – Because each one is sort of independent. The basis he gave for holding on it, right? No, he found fraud as to – the court clearly found that the defense engaged in fraud by telling workers they would have retiree benefits if they worked for 10 years and reached age 55. This was a result of a seven-day bench trial, and I'm just not particularly inclined to casually overturn the results of a seven-day bench trial in a case which, at least partly, is due to equitable factors. The breach of fiduciary duty claim was whether there was an unreasonable reliance on misrepresentations with respect to the lifetime duration of the benefits and what have you, and it seemed to turn here on whether there were reservations of rights and whether they were fully informed of that, so the district court parses it very clearly and says, well, with respect to four of these plaintiffs, if you look through this, the seminars and the writings and everything, the company was very, very careful to include language that clearly reserved its rights, but with two of them, there was no such reservation of rights, and why wouldn't that question of reservation of rights be a very important factor in the outcome of a seven-day bench trial? What the district court found is that the fiduciary breached its duty by misrepresenting the reservation of rights, saying that's only lawyer talk. We may reserve the right to alter these benefits, but only for your benefit as the beneficiaries of our trust. That was part of the fraud here. It was a decades-long scripted presentation that can solve through its HR department provided to its workers, and the district court erred because none of the cases relied upon by the district court required detrimental reliance for the remedy of reformation, which is the remedy the district court afforded. Burstein was an estoppel case. Unisys was an estoppel case. The question of detrimental reliance, wouldn't that be, and I associate myself with Judge Wynn's comments that look pretty good to me. Wouldn't that be a detrimental reliance? Wouldn't that be a determination with a significant factual component? No, Your Honor. The requiring a showing of detrimental reliance is not an element of proving fiduciary breach, and that's where the court erred. In Amara, the Supreme Court clarified that material fraudulent suppressions or materially affecting the substance of the agreement between the parties is the predicate for reformation. Misrepresentations causing harm by a fiduciary represent fiduciary. Did you argue in the district court that you did not have to meet the detrimental reliance standard? Yes, we did, Your Honor. We did argue that, and the judge disagreed with us. At what stage did you argue that? Well, we argued that. Not that you disagreed as to whether there was detrimental reliance, but did you argue that you did not have to meet that standard? Yes, at summary judgment, we discussed Pierce against Chrysler Group, Osberg against Footlocker, the same cases largely that we've briefed here. And those Pierce against Chrysler is a Sixth Circuit case, which was a reformation case, unlike the authorities relied upon by the district court, which were estoppel claims. Detrimental reliance is traditionally required for a showing of equitable estoppel, Your Honor, at equity. So you're saying the district court relied on equitable estoppel? We didn't plead equitable estoppel, and the district court expressly found that. Well, didn't you argue to this court that that's what, I mean, you haven't argued to this court that the district court did that, that it relied upon equitable estoppel to justify the relief that was ordered. Well, the district court confused, the district court required detrimental reliance for a showing of fiduciary breach, but that need not be demonstrated. And, in fact, our plaintiffs did rely. They took action. They worked for 10 years, reached age 55. They were the beneficiaries of a trust as a fiduciary. You're not entitled to mislead, intentionally mislead your beneficiaries to their detriment. But that, again, you know, whether they were intentionally misled or whatever, the intentionality of it and detrimental reliance, that seems to all of that seems to be stuff that would come out in the seven-day bench trial with the ultimate decision turning on the fact of whether these, whether your clients were mistreated or dealing, dealt with unfairly in some kind of way. And, as I say, this whole, this matter has a significant equitable dimension. And a trial court judge is able to get a hold of that kind of equitable dimension in a manner that an appellate court cannot. And I haven't seen anything that was sort of hit me intuitively as being wrong about what the district court did. Well, what's wrong about it is that he required a showing of reliance. And let me say that this court in the Amara case, which has been applied by this court several times, all, never, the Amara case does not require, did not contemplate a showing of detrimental reliance in that. That was, this court has addressed surcharge and disgorgement in the Pender cases. Detrimental reliance was not required in the Pender cases. It's decided several times by this court. Detrimental reliance should not be similarly required in a reformation claim for fiduciary breach. It wasn't required in Pender. It shouldn't be, for disgorgement, it shouldn't be required here for fiduciary, for reformation, remedying fiduciary breach. And that's our- So it all comes down to, I mean, you take your, as you go down each one of them, you take someone like Long. He knew his benefits were going to be terminated at any time. He was one of those ones that came up and says, yeah, I know this. But he kept on with it. So the question is, it's almost like a harm analysis is, okay, well, how, you didn't rely upon this. You knew they could change this policy at any time. Well, the question, and this gets to our second assignment of error regarding the discriminatory fashion in which Consul terminated the benefits. When they terminated the benefits, they eliminated the retiree plan. They took the funds that had secured that plan. So you're saying all this hinges on discriminatory intent? Well, disparate treatment of the retirees. When Consul terminated the benefits, they gave a preferential payment to a small subset of the most recent retirees. Right, but what was the evidence that that was pretextual? The evidence was the testimony of the fiduciary, Curt Salvatore. He testified that the excluded group of retirees had, quote, received the benefit for a period of time and that the thinking was, that was at JA 207, at JA 292, Salvatore said, for the retirees that existed at that time, if we extend the benefits for five years, most of them will have hit Medicare age. We will honor, and he believed, as the set law, we will honor our fiduciary duty. Every program has those who are eligible and those who are not. In this case, it seems to me that you have a one-time payment, and it favored those who were less likely to be able to rely on Medicare or whatever, and so it favored the younger people, but that's, why don't you explain on rebuttal why that was wrong, okay? Yes, Your Honor, thank you. Mr. Fitzsonic, let's hear from you. Mr. Torres, I'm Joseph Torres, Your Honor, representing the defendants. Let me start where you all began this discussion regarding detrimental reliance. Is it required? I'm sorry? Is it required? It is, and in fact, Your Honor, I think— The opponent says, no, that's not something you should have been doing. I don't know where it came from because it wasn't in his open brief, but maybe those supplemental authorities that were submitted might have had it in it. Well, Your Honor, I'm looking at— I think that's a focal point to start off as a question of is detrimental reliance something the district court erred in considering in terms of the breach of claim? And then it seems to me if you were representing— Oh, well, just with the four— That's why I said each one of them has a different type of reasoning that the district court meticulously, I thought, went through it and articulated the reasons. And maybe there might have been something I might could have thought a little differently about, but I thought it was pretty straightforward. Yes, Your Honor. To start with the question of detrimental reliance, if you look at plaintiff's own brief to this court at page 34, they admit that detrimental reliance is an element of the claim that they brought. They specifically say, to prove detrimental reliance, a plaintiff must establish several elements, specifically among those detrimental reliance, citing to George v. Duke Energy, District of South Carolina, 2008. I would also point out, in response to Judge Keenan's question, that in plaintiff's findings of facts and conclusions of law before this trial even commenced, section 7 of their findings of facts is entitled, Plaintiff Detrimentally Lied on Defendant's Misrepresentations. And if you look at page 10 of their findings of facts and conclusions of law, they again state, before the trial even began, it's paragraph 47 of their proposed conclusions, in order to establish a claim for breach of fiduciary duty based on alleged misrepresentations regarding coverage under an Employee Welfare Plan, a plaintiff must prove, among other things, element 4 they list is detrimental reliance, citing to the Bernstein case from the Third Circuit, along with Adams v. Freedom IV. What is our standard of review of the District Court's determination of whether there was detrimental reliance? Clear error, Your Honor. And as you look at each one of these, you may take a different position on a couple of them, it's very difficult to come out and say the District Court, after going through and articulating these reasons, committed a clear error. Yes, Your Honor, and I would agree that as to the individuals for which he concluded that they were fully aware of the reservations of rights, there is no clear error in the record that those individuals did not detrimentally rely on any alleged misrepresentations that were made to them. But you don't like what he did with the other two. Yes, I do, Your Honor, and that's based on two decisions of this Court that look at the requirement that to show detrimental reliance, you have to show that you actually incurred some harm. Your evidence has to be non-conclusory, non-speculative. And with respect to Mr. Bright, the Court simply found that after he had heard at a retirement seminar that he would have retirement benefits, the sole factual finding in the record is that then Mr. Bright began planning his retirement. There's no findings with respect to Mr. Bright that he did anything to his detriment, that he forewent a more lucrative job opportunity, that he opted to retire earlier than he might otherwise have done. There's no evidence with respect – the judge made no findings of fact as to anything specific Mr. Bright did in reliance upon these alleged misrepresentations. And the same is true for Mr. Prater. So you need – and I agree with you, I don't see how this could not be – detrimental reliance could not be an important part of the equation here. I agree with that. But that means that you've got to accept that for purposes of the cross appeal as well. Absolutely. And so for purposes of your cross appeal, there was a factual finding on detrimental reliance made on those, and that there was a breach of fiduciary duty because he had an obligation to administer these funds in the interest of the planned participants and everything, and there was detrimental reliance on the false representation of a lifetime duration of these benefits. Now, you've been – you know, you've been – you've had your arm around the district court's shoulder on the purposes of the direct appeal and saying, oh, this is factual, this is clearly erroneous, and I'm saying, yeah, right, I got you. So what are you bringing your cross appeal for? Because he made a very careful thing that there was no reservation of rights, that these people relied on what was a false representation, and if we're going to – I mean, you know, what's good for you in a direct appeal is just kind of really a problem when you get over to your cross appeal. So why are you bringing it? I'm not – I don't think we're talking out of both sides of our mouths. I disagree, Your Honor, because here's – there's a critical distinction between the four plaintiffs that did not prevail and the two plaintiffs that did. For those individuals that did not prevail, the judge made very specific findings about their awareness of a variety of reservational rights clauses that precluded them from detrimental relying on other statements. That's the judge's findings, and we agree with that. But all these cases were consolidated, weren't they? Yes, Your Honor. Okay, and they all went to trial together, didn't they? We sure did, Your Honor. So, you know. Your Honor, what I would say that we're – where we part with Judge Copenhaver's analysis simply goes to the findings of fact that he made with respect to Mr. Bright and Mr. Prater on the issue of detrimental reliance. In this court, in D.A.K. Americas and Damiano, which are the other two cases we cited to this court, they found that similar evidence from plaintiffs was insufficient to establish detrimental reliance because there was no specific evidence of any actions they took in reliance on the statements. And we submit – Well, you've got Prater. They say he accepted that job because he was assured of the lifetime benefits. Why is that not? He said he was instructed to disregard that fine print up there, and he relied on these assurances to accept the job. Prater is a tough one for you. Your Honor. That one is – you can walk with that as much as you want, but that's a tough one for you. I know why you jumped on Bright. That's a closer call. But Prater, you know, at least in terms of the facts that the judge made, that challenges, you know, just – that's a challenging situation. What I would say about Mr. Prater, Your Honor, is that accepting a job that he admitted did not have retiring medical benefits does not show him taking any action to his detriment. He said he accepted because he was assured he would get benefits, and that little fine print, he was told, oh, don't – I guess that's – I'm not sure that's where the lawyer talk stuff came up, but just, you know, disregard that. And he relied on those – this is his testimony – when he accepted the job. The ones who didn't get it are the ones – all of this evidence seems to come from the individuals themselves. I don't know – so it tells me they weren't coached. If they were coached, you know, in terms of what to say, I mean, you get up and say, all right, yeah, I knew about it. You couldn't get it. Yeah, like Mr. Long, you're not going to get it because you know you did – you basically say you did not. Or if you decide you're going to go and switch over as Mr. Fitchwelder and, you know, join the union side of it, oh, yeah. I mean, those are ringer cases right there. But in both of these instances, just as the commonality you indicated with the four, in both of those instances, there's no indication that they – that that fine print is something that they had before them. In fact, Prater himself says he was told to disregard it. And then there's no evidence to suggest that Bright even knew this stuff was there. But that he did – there's evidence that he planned his retirement based on the expectation of lifetime benefits. That's a detrimental reliance. If you're somewhere and you see you have lifetime benefits now, even if you read something that's going to change, but if I retire, I've got some benefits, and then all of a sudden, boom, you don't. And isn't that detrimental reliance? I would disagree for these two reasons, Your Honor. With respect to Mr. Prater, the acceptance of the job did not include – there's no evidence that in offering him the job, they said anything about disregarding any other language. That happens in a subsequent orientation. So our point is that the only finding that Judge Copenhaver made with respect to Mr. Prater's detrimental reliance is that he accepted a job because they told him he had these benefits. And I would submit that accepting a job does not demonstrate any detrimental reliance because he was not foregoing some other opportunity. Well, I mean, the question – this is all factual material. The question is, you're trying to convince me as a matter of law that acceptance of a job based on a misrepresentation is not detrimental reliance? That's not your position, is it? My position, Your Honor, is that to show – It goes to why did he accept the job. Did he accept the job in reliance upon the representation or did he not? And that's factual. That's factual. That's not us. We're not challenging the reliance piece of this. It's the detrimental piece that's missing. The Fourth Circuit precedent that we cited specifically says you have to show not that you just did something but that you did something that caused you some harm. That's the detrimental aspect of the analysis. That's heavily factual. But if the only conclusion – Matters of causation are factual. There is causation to show that he relied on it to take some action. There is no evidence of causation to show he suffered any harm as a result of accepting the job. Similarly, with respect to Mr. Bright, the single line of testimony that Judge Copenhaver relied upon was Mr. Bright saying, After I heard this statement, I started planning his retirement. What did you do? What did you do to your – What, did you retire early? Did you opt for a different level of benefits because you believed you were entitled to something? If you look at the DAK case and the Damiano case, these are exactly the same types of findings that this Court found to be lacking because there was no evidence of any actual harm that these people suffered as a result of it. What about Mr. Long? I know Mr. Long acknowledged he knew about the Reservation of Rights Clause, but isn't there also testimony in the record that he privately talked to a consul rep who told him that this reservation of rights language wasn't an issue? And he did detrimentally rely in that he turned down coverage from an employer due to the representation that he had with consul. So it seems to me that at least that gets closer. I think the specific findings Judge Copenhaver made with respect to Mr. Long was, I don't think it's going to be an issue. But he found that there was no specific representation of Mr. Long that he would have lifetime benefits. The other problem Mr. Long has is that my client didn't terminate his benefits, Your Honor. He went to another company called Murray Energy, and the evidence is in the record that they're the ones who terminated his benefits, not consul. So Mr. Long has several problems with his claim, even if the individual made a promise as you suggest, Your Honor. And I think actually Judge Copenhaver's findings, he draws a distinction between what that individual said to Mr. Long and what that individual said to Mr. Jack. Let me understand something, at least in terms of going back to a context. There were those who went with the union, and those who went in that venue were able to get benefits beyond what the company did here. Is that correct? In other words, it was a benefit. You were better off if you went with the union and stayed with the company. I mean, I believe the evidence in the record, Your Honor, is that the company believed that its benefits were more lucrative than the union's. I understand what they believed, but I'm talking about as a result of this, at the end of the day, those who went with the union were better off. I suppose it's a matter of subjective understanding as to what – Well, yeah, you get nothing even with the company. Do you get anything, Pete, with the union? I mean, the company cuts you off and says nothing. There's very limited remedies for those that might leave today as opposed to tomorrow. Yes, Your Honor. So at the end of the day, all of these company efforts to keep employees from going over to the union and representations that are alleged to have been made by HR folks the whole time, you know, you've got these benefits, lifelong benefit, little print down here, ignore that sort of print, the whole bit. At the end of the day, the very people who relied and believed the company are the ones who are being punished at the end. It's kind of a – I realize the case is a legal case, but I'm telling you factually, it's almost like why would you do this to people who were loyal to you and who in fact stayed with the company? There are people who are like that. They're going to stay with you to the day you go. If you say I'm with you the whole bit, then in some sense, I don't believe them. I'm going to go over to the union. But my question – and you sort of answered it, but I think the answer is pretty obvious that, you know, you've been better off to go. All of these have been better off going with the union. The union might have protected them a little better than the company because the company is more of a different type of situation. But I just want to make sure I understood the context of what we hear. And even now, as we get down to it, you only have two people that prevailed. And, you know, we up here on a clear review. We're going back and forth as to whether this is detrimental or reliance. The fellow says he took this job. I only took it because of the lifelong benefits. He told me it would be good, told me ignore it. I mean, it seems like you want everything in this case. You want this case. But for the most part, you know, from what I can see, it's certainly not from a fairness perspective in terms of people if they actually heard these things. But to turn it to the detrimental reliance takes away all of the things before it in determining, well, did you say that? Did you do that? We've got a detrimental reliance. Did you rely on it? And I thought the judge was very thoughtful and careful in this. And I think you rightfully did wrap your arm around him on the other side. I think that arm ought to stay wrapped around him on the other side, too. You might just want to take to heart what my colleague Judge Wynn has said. You're in a winning position, and you're trying to disadvantage the people who actually took you at your word. And you're trying to punish, for whatever reason, those who were most loyal to you. And you might want to think about that at some point in terms of what's going on here. Okay. I have a rebuttal, and I can come back to Judge Wynn. Make it quick, okay? No, no, no. I was going to say I have five minutes reserved, and so I can answer Judge Wynn's questions about what he just posed, but I'm happy to wait until I come back and rebuttal to do that. Why don't you wait? You've got five minutes remaining, and you can make that point.  Thank you, Your Honor. Now, Mr. Torres, you have some rebuttal time.  Judge Wilkinson, you had asked me how did CONSOL discriminate if they provided the five years of continued benefits that was contemplated by the fiduciary, Kurt Salvatore, in his testimony that I had summarized at the conclusion of my opening. CONSOL discriminated because, in the record here, you'll see CONSOL did not proceed to provide the five-year transition. That named fiduciary that Kurt Salvatore had contemplated as fair and reasonable at the outset. Well, it seems to me that when all the dust clears, they were trying to treat the younger workers more favorably because they were less likely to have Medicare or Medicaid coverage. And, you know, I don't even know that this is even an ERISA case. We're talking about a one-time payment, and we've got this poor Hudson case that says, no, this doesn't come under ERISA. But the other question is, if it's a matter of discrimination or discriminatory intent, that in terms is a factual matter. There aren't any disparate impact claims. There are no disparate impact claims here. Class certification was denied, okay? Class certification was denied partly for numerosity reasons, but also because they were sufficiently dissimilar of the plans. There wasn't sufficient commonality. So when you deny class certification and you say that this hinges on a matter of discriminatory intent and you say that I'm denying certification because the circumstances vary, that throws the whole thing back into a bench trial and a finding of fact, which we have before us here. This is an odd time, I might add, for you to bring a challenge to a denial of class certification. Normally we get those on an interim basis or right after an interlocutory basis, but it's odd to me to see you challenging a denial of class certification after the case has been resolved. We did seek the interim appeal, Your Honor, and the court declined to take it at that time. It's an odd time for us to be deciding a class certification issue after a trial in which the plaintiffs were dissimilarly situated and the rest. With class certification being denied and with it being an issue of discriminatory intent, that throws it all over into a factual bin and into the district court's province, which he discharged admirably in a seven-day bench trial. And that was set up when the class certification was denied and when it was an issue of discriminatory intent. That made it factual and the findings were made. The court erred, Your Honor, as to that issue by holding that we could not prove disparate treatment by way of indirect evidence. The court at JA 292, he said, without evidence, JA 291, he said, there's no direct evidence consult, analyze, claims experience. So what are you asking us to do? You're asking us to reverse the summary judgment on the class certification? No, no, Your Honor. Reverse the summary judgment on the discrimination count because we did show by indirect evidence, by the fiduciary's own testimony, that they knew they were drawing a distinction between retirees who had greater claims experience and other retirees who had less claims experience. And the fiduciary took money and gave it to the least experienced, the least costly retirees and excluded all the other. If they're going to terminate the plan, if you're inclined to uphold the verdict as to fiduciary breach, can surely the fiduciary not be permitted to make a preferential payment to the healthiest amongst the retirees? Right, but they gave a different reason. They didn't say we're doing that because they're healthier. They said that they retired with an understanding that the benefits were going to continue until 2019, didn't they? And then the benefits were terminated in 2015. Right. And so they felt that these people were the most directly impacted by the fact that their initial plan to go to 2019 was not going to be carried forward. That was their explanation, not we're going to go for the more healthy people. Well, but the court erred by finding that we could only prove direct evidence of specific discriminatory intent. It's enough to show indirect. We showed here that the fiduciary understood they were creating a category based on claims experience. They were excluding the people who had cost them more. See, this is what I don't understand. I think maybe you're not being close enough to the record in this case because wasn't the evidence, didn't the district court accept the evidence that the reason why the more recent retirees got it was not because they were healthier. They got it because the consul had made the representation that we're going to continue the plan until 2019. And then when they decided soon thereafter to cut it off at 2015, they felt that these people were the most closely impacted by that decision, not the retirees who had already been retired for a number of years. Wasn't that what the district court found? Well, there was a genuine dispute of material factors to that. Yeah, but it's not what the district court accepted. We believe erroneously it should not have been resolved at summary judgment. That's the issue on that, Your Honor, that there was a triable question as to whether there was indirect evidence of discrimination. If the court would remand the case with the instruction, you know, for the court to try that question about whether it was discriminatory. Okay, so the only evidence of pretext, though, from your perspective, is that these people were younger and ostensibly more healthy. Well, no, the evidence is that consul self-insured this plan. They knew that the more experienced folks had filed claims for years. The claims data is in the record here in this case, and the fiduciary knew it, Salvatore. So how does that show pretext? Well, because especially in light of the background of the fraud here, the company was trying to get out of the expensive obligation of all that, of paying for the costly claims of retiree health care, and they made a preference. They terminated the plan. They pocketed the money and made a preferential payment that favored a small subset of these retirees. Okay, but it seems to me you're just saying it's logical that they did this because it was cheaper this way. But is that enough for you to survive summary judgment? Well, we believe it should be, Your Honor, and certainly the district court also didn't have the benefit of any perspective on what claims experience means. It's a term that hasn't really been defined in any decision of this court before, so it's somewhat of a novel concept. So we think there was a triable question as to whether it can solve discriminated. If I may, Your Honor, just to address the equitable tolling issue regarding Mr. Jack, the court clearly erred there by finding Mr. Jack's claim arose from the time that he relied rather than the time that he actually discovered the fiduciary breach. I think we understand your briefing on that issue, and that will be fine, but I think we understand the briefings surrounding the statute of repose and the questions raised with regard to that. Okay?  Thank you, Your Honor. Thank you. Sir, you've got five minutes of rebuttal here, and we'll hear from you. It won't take five minutes. To go back to Judge Wynn's question regarding who was disfavored or disadvantaged here, the record evidence as to why Consol terminated these benefits speak to some unanticipated and serious economic conditions that this coal company and many others were facing at the time. And so I don't think there's any evidence in the record that they were intending to lead people on with the intention of not having these benefits extend for as long as humanly possible. And the fact that they had to make difficult financial economic decisions is what drove this, not some desire to lead them away. It wasn't meant to indicate that they did this for a notorious reason or with bad intent or bad faith. I'm just speaking at the end result of it, that those who chose to go with the union ultimately fared out better than being with the company, and at the end of the game or the end of the day, economic factors all considered at least the efforts to, you know, given the five years, if you lead a day, I see there was some mitigating efforts there. But ultimately still, those that chose to go with that union appears to have fared out better than if you, you know, stayed with the company. And back in the old days when I've seen it happen, small town where someone's going out of business and they go out of their way to make sure those employees who had been faithful and loyal to them all those years would be taken care of, and sometimes even to their own detriment. And I'm not saying that wasn't done here. But I'm just saying at the end of the day, now we're coming down, we've got six individuals here, two, we say, yeah, there's detrimental reliance, at least in terms of there may not be clear error on it, and the vigorousness of not even wanting to deal with those two, that's kind of what the matter we're getting at. I understand that, Chairman. The only other point I was going to make is this question of going with the union or not, I believe the record evidence is that Mr. Fitzwater had qualified for those benefits. He went over. He went on and jumped on board with them. So I guess he's okay. I don't know why he's here. Well, I don't either, Your Honor. But he had qualified for those benefits before he joined Consul, so it wasn't a question of him going to the union at that point in time. He was just taking advantage of benefits he had qualified for earlier. That was the only other point I wanted to make there. And then, Judge Winn, on the discrimination point, there's nothing novel about this statute. It requires but-for causation contrary to counsel's argument here. It's a paradigmic discrimination claim where on summary judgment they were required to actually put forward evidence sufficient to withstand summary judgment, and they didn't do that. All they relied upon on summary judgment were two experts that the judge completely rejected It is offering nothing but speculation and conclusory suppositions about why Consul did something. And so there's nothing confusing or complicated about this. It works just like any other discrimination case does, and nothing that counsel offered today shows any error in the judge granting them a summary judgment. And then the only other point I'll make, and then I'll conclude, is that with respect to class certification, I think it's important that we look at what they actually appealed to this court regarding class certification, which was a much narrower question of whether the judge should have granted their renewed motion, which only related to this discrimination claim. And so the standard of review for the judge exercising his discretion not to allow them to have a second bite at the apple is subject to a much higher standard of review than simply going back and evaluating whether or not class certification, as to all their claims, had been properly denied. We don't think they preserved that for appeal. We think their class certification appeal is much narrower, and we don't think that there was any abuse of discretion by Judge Copenhaver in denying their last minute renewed motion. So we'd ask that the majority of Judge Copenhaver's ruling be upheld, and you obviously heard our position as the other two. Thank you very much. All right. We want to thank you very much for your good presentations. I might say just as a matter of appreciation that Judge Copenhaver is a centenarian, and from my standpoint, he just gets better every year. What a wonderful man. All right, we'll come down and we'll adjourn court and come down and recount. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Barbara Milano Keenan